EDWARD WAYNE MOOSE, PLAINTIFF v. NISSAN OF STATESVILLE, INC., DEFENDANT v. JOHN GREEN, EXECUTOR OF THE ESTATE OF ALGA GREEN, DECEASED, THIRD PARTY DEFENDANT

No. 9319SC625

(Filed 5 July 1994)

**Appeal and Error § 119 (NCI4th)— summary judgment on punitive damages—substantial right not affected—order interlocutory and not appealable**

Plaintiff's appeal from the trial court's order granting defendant partial summary judgment on the issue of punitive damages is interlocutory and is dismissed, since an interlocutory order is appealable if delaying the appeal will result in the prejudice of any substantial rights of the parties; the Court of Appeals specifically eliminates the application of the doctrine of substantial rights to cases wherein partial summary judgment has been granted denying a claim for punitive damages; if plaintiff were ultimately successful on the appeal of the summary judgment issue, he would not be required to undergo separate trials on the same issues; there would not be a possibility of inconsistent verdicts should plaintiff prevail on a later appeal; and plaintiff's right to pursue punitive damages would not be lost, prejudiced, or not fully and adequately protected by taking exception to the order's entry.

**Am Jur 2d, Appeal and Error § 104.**

Appeal by plaintiff from order entered 15 February 1993 by Judge Russell G. Walker, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 21 March 1994.

This case arises out of a multiple vehicle accident that occurred on the morning of 26 October 1990. One day before the accident, the sales manager for the Nissan automobile dealership contacted third party defendant John Green and asked him if he was interested in traveling to a dealership in Manchester, Tennessee to pick up a vehicle and return it to the Nissan dealership in Statesville. Mr. Green, a fifty-nine year old retiree who, on occasion, drove vehicles for Nissan to either deliver or pick up vehicles, agreed to make the delivery and enlisted his sixty-five year old wife, Alga Green, to accompany him because two drivers were needed to complete the trip.

The Greens departed from the dealership about 1:00 p.m. on 25 October 1990, and they arrived at the Tennessee dealership at approximately 7:45 p.m. Mr. Green called the Nissan sales manager in Statesville and told the manager that he and his wife were tired, and one of the wheels on the 1990 Sentra they were driving was making a "roaring" sound. Mr. Green suggested to the manager that the Greens stay in a motel overnight and return the following morning. The manager replied that the truck Green was delivering had to be in Lumberton the following morning. He told Mr. Green to bring the car to Statesville where he would be waiting for them at the Nissan dealership between 7:30 and 8:00 a.m.

The Greens followed the manager's advice and returned to their home in Statesville around 4:30 or 5:00 a.m. on 26 October 1990, and then went to the dealership around 6:30 a.m. and met with the manager. The manager thought that the Greens "appeared fine." After exchanging the Sentra for another one, Mr. and Mrs. Green departed for Lumberton at approximately 7:30 a.m., driving the pick-up truck and Sentra respectively.

At approximately 10:40 a.m., plaintiff was operating a tractor-trailer owned by Ronald Rogers Trucking in the course and scope of his employment, and was traveling, fully loaded, in a northerly direction on U.S. Highway 52, a two-lane highway, about four miles north of Wadesboro. At the same time, Mrs. Green was traveling the same highway in a southerly direction. Mr. Green was following Mrs. Green. At some point immediately prior to the accident, the vehicle driven by Mrs. Green partially crossed the center line of U.S. Highway 52 into the northbound lane of travel. Despite plaintiff's effort to move over as far as he could in the right lane without dropping off into the shoulder, Mrs. Green's car struck his vehicle head on, shearing off the left front wheel and causing his tractor-trailer to veer

across the road into the southbound lane, missing Mr. Green's pick-up truck, but into the path of another tractor-trailer owned by Ronald Rogers Trucking and driven by Ricky Earnhardt. The two tractor-trailers collided. Plaintiff was thrown from his vehicle into a utility pole and suffered back, head, neck and shoulder injuries. Mrs. Green was killed in the crash. No autopsy was performed.

Plaintiff appellant Moose sued defendant appellee Nissan for compensatory and punitive damages arising from personal injuries he suffered as a result of the accident. Defendant answered and impleaded John Green as the personal representative of Alga Green. Defendant Nissan moved for partial summary judgment on the issue of punitive damages by motion on 29 September 1992. After a hearing on the motion, the trial court granted partial summary judgment in favor of defendant. Plaintiff appeals.

*Wallace & Whitley, by Michael S. Adkins, for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, by Robert W. Sumner and Robert H. Griffin, for defendant appellee Nissan of Statesville, Inc.*

ARNOLD, Chief Judge.

Plaintiff's appeal from the trial court's order granting partial summary judgment is interlocutory. It "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham,* 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied,* 232 N.C. 744, 59 S.E.2d 429 (1950). Generally there is no right to appeal from an interlocutory order. *Id.*

An interlocutory order may, however, be appealed by one of two avenues. First, where more than one claim for relief is presented in an action or the action involves multiple parties, and the court enters a final judgment as to one or more but fewer than all of the claims or parties, the judgment may be subject to review upon certification by the trial court that there is no just reason to delay the appeal. N. C. Gen. Stat. § 1A-1, Rule 54(b) (1990). In the case before us, plaintiff did not request, nor did the trial court supply, certification under Rule 54(b).

Despite the absence of certification by the trial court, a second avenue to appellate review is available if the interlocutory order qualifies under the provisions of N.C. Gen. Stat. § 1-277 (1983) and N.C. Gen. Stat. § 7A-27(d)(1) (1989). *Oestreicher v. Stores,* 290 N.C. 118,

225 S.E.2d 797 (1976). The most common application of these statutes arises in the issue of whether delaying the appeal will result in the prejudice of any substantial rights of the parties. *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 376 S.E.2d 488, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). Thus, prior to our review of the merits of plaintiff's appeal, we must determine whether a substantial right will be prejudiced absent immediate appellate review.

It has been noted that "the 'substantial right' test . . . is more easily stated than applied." *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). The nebulous nature of the doctrine has become a particularly frustrating problem for this Court. Illustrative of this is the fact that despite an enormous period of time spent addressing this issue, two lines of cases regarding the guidelines for determining whether a substantial right has been affected have emerged from the decisions of our appellate courts.

In *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976), it was determined that regardless of the nature of the issues involved, a plaintiff had a substantial right to have all his causes against the same defendant(s) tried at the same time by the same judge and jury. *See also Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E.2d 278 (1976); *Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 331 S.E.2d 205, *disc. review denied*, 314 N.C. 542, 335 S.E.2d 316 (1985).

N.C. Gen. Stat. §§ 1-277 and 7A-27(d)(1) were later interpreted by the Supreme Court in *Waters* to require that the affected party's ability to enforce the substantial right absent immediate appeal must be *lost* before the doctrine could be applied. *Waters*, 294 N.C. 200, 240 S.E.2d 338.

In *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), the Supreme Court further defined both holdings. First, the *Green* Court held that generally the right to avoid a trial is not a substantial right, but avoiding two trials on the same *issues* may be. The Court then created what we believe to be a two-part test by stating that "the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Id.* at 608, 290 S.E.2d at 596. In other words, not only must the same issues be present in both trials, but it must be shown that a possibility of inconsistent verdicts may result before a substantial right is affected. Adapting this rule to the *Waters* requirement that the right in question

**MOOSE v. NISSAN OF STATESVILLE**

[115 N.C. App. 423 (1994)]

be lost absent immediate review, the *Green* Court held that appellate review could be warranted in those instances where the right might be lost, prejudiced, or not fully and adequately protected by taking exception to the order's entry. *Id.*

Thus, cases which rely on *Oestreicher* have found substantial rights to be affected merely on the grounds of a party's right to have all claims or causes determined in one proceeding. Subsequent cases relying on *Green* require the appellant to demonstrate the possibility of inconsistent verdicts resulting from separate trials on the same factual issues. These discrepancies were addressed by this Court in detail in *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 362 S.E.2d 812 (1987). In *Slurry*, while not expressly overruling the *Oestreicher* line of cases, this Court indicated its support for the *Green* line of cases requiring a showing that separate trials would result in the possibility of inconsistent verdicts, thereby prejudicing the substantial right in question, in order to warrant application of the substantial right exception. An examination of the cases to come after *Slurry* tends to show that this is the current path most often followed. *See Taylor v. Brinkman*, 108 N.C. App. 767, 425 S.E.2d 429, *disc. review denied*, 333 N.C. 795, 431 S.E.2d 30 (1993); *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 376 S.E.2d 488, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989); *Lamb v. Lamb*, 92 N.C. App. 680, 375 S.E.2d 685 (1989); *Nance v. Robertson*, 91 N.C. App. 121, 370 S.E.2d 283, *disc. review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988); *Vaughan v. Moore*, 89 N.C. App. 566, 366 S.E.2d 518 (1988); *Whitehurst v. Corey*, 88 N.C. App. 746, 364 S.E.2d 728 (1988).

In the case before us, plaintiff relies on *Oestreicher* and its progeny to support the immediate appealability of an order granting defendant summary judgment as to punitive damages. For the following reasons, we feel it is time to establish the requirements contained in *Green* as controlling in its redefining of *Oestreicher*. Further, based upon the reasoning in *Green*, we take this opportunity to eliminate specifically the application of the doctrine of substantial rights to cases wherein partial summary judgment has been granted denying a claim for punitive damages.

First, we examine whether the facts before us dictate that plaintiff would be required to undergo separate trials on the same issues, and, if so, whether there is a possibility of inconsistent verdicts,

should he be ultimately successful on the appeal of the summary judgment issue. We find he would not.

In order to establish liability on the part of defendant, plaintiff must show (1) that defendant was negligent, and (2) that defendant's negligence was the proximate cause of plaintiff's injury. *Dixon v. Taylor*, 111 N.C. App. 97, 431 S.E.2d 778 (1993). To prevail on a claim for punitive damages, plaintiff must show that defendant's *established* negligence which proximately caused his injury reached a higher level than ordinary negligence; that it amounted to wantonness, willfulness, or evidenced a reckless indifference to the consequences of the act. *Ingle v. Allen*, 69 N.C. App. 192, 317 S.E.2d 1, *disc. review denied*, 311 N.C. 757, 321 S.E.2d 135 (1984). Therefore, despite being based on the same facts, the issues before the jury are separate.

Because the issues are separate, there is no possibility of inconsistent verdicts should plaintiff prevail on a later appeal. If the jury at the initial trial determines that defendant was negligent and plaintiff is therefore entitled to compensation, a retrial on the issue of punitive damages wherein defendant's negligence has already been established, may be won or lost without inconsistency in the verdicts. Should plaintiff lose at trial on the issues of negligence and proximate cause, he would not be eligible for recovery based on punitive damages, and a significant amount of time and effort expended at the appellate level will have been avoided. Again, there is no possibility of inconsistent verdicts.

Nor will plaintiff's right to pursue punitive damages be lost, prejudiced, or not fully and adequately protected by taking exception to the order's entry. As stated above, if he is successful at trial on the issues of negligence and proximate cause, he may still proceed with the issue of punitive damages on retrial following a successful appeal. If plaintiff is unsuccessful at trial, he will have lost nothing in his pursuit of punitive damages, because the jury verdict would preclude the award.

The immediate appealability of summary judgment of punitive damages claims was established in *Oestreicher*. It was based on the Supreme Court's initial explanation of the doctrine of substantial rights and grounded in the general, broad-range language contained therein establishing that a plaintiff has a substantial right to have all his causes against the same defendant(s) tried at the same time by the same judge and jury regardless of the nature of the issues involved. Although many refinements to the rules warranting the application of

**MOOSE v. NISSAN OF STATESVILLE**

[115 N.C. App. 423 (1994)]

the doctrine have occurred since that time, in case after case involving summary judgment of punitive damages, *Oestreicher* has been cited too often by rote. It is the opinion of this Court that the rulings during the nearly two decades following *Oestreicher* have effectively eliminated the application of the doctrine to this issue.

Beyond the application of case law as a basis for eliminating summary judgment of punitive damage claims as warranting immediate appellate review, we believe that there are sound reasons grounded in public policy, fairness and judicial economy, for doing so.

The present case is not the first in which this Court has considered and weighed the detrimental effects of an interlocutory appeal against its possible benefits. In *Stephenson v. Stephenson*, 55 N.C. App. 250, 285 S.E.2d 281 (1981), the plaintiff appealed from an interlocutory order awarding alimony pendente lite, child support pendente lite, and attorney fees pendente lite. Prior to *Stephenson*, this Court had held that such orders affected a substantial right, and therefore were subject to immediate appellate review under G.S. §§ 1-277 and 7A-27(d). *See Peeler v. Peeler*, 7 N.C. App. 456, 172 S.E.2d 915 (1970), *overruled by Stephenson v. Stephenson*, 55 N.C. App. 250, 285 S.E.2d 281 (1981) (concurred in by all members of the Court). The *Stephenson* Court, however, dismissed the plaintiff's appeal, holding that "orders and awards pendente lite are interlocutory decrees which necessarily do not affect a substantial right from which lies an immediate appeal pursuant to G.S. § 7A-27(d)." *Stephenson*, 55 N.C. App. at 252, 285 S.E.2d at 282. In our decision to overrule *Peeler* and its progeny, the Court relied on the following rationale:

> Today the situation is quite different. In the majority of appeals from pendente lite awards it is obvious that a final hearing may be had in the district court and final judgment entered much more quickly than this Court can review and dispose of the pendente lite order. In this appeal, for instance, the matter could have been heard on its merits and a final order entered by the District Court in Hertford County months before the appeal reached this Court for disposition.

> There is an inescapable inference drawn from an overwhelming number of appeals involving pendente lite awards that the appeal too often is pursued for the purpose of delay rather than to accelerate determination of the parties' rights. The avoidance of deprivation due to delay is one of the purposes for the rule that interlocutory orders are not immediately appealable. . . . As

stated by our Supreme Court in *Veazey v. Durham*, 231 N.C. 357, 57 S.E.2d 377 (1949), "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Id.* at 363.

*Id.* at 251-52, 285 S.E.2d at 282.

We think that the reasoning announced by this Court in *Stephenson* applies with equal force to the issue presented to us today. The increased litigation in our state has created a tremendous number of interlocutory appeals for this Court. The overwhelming burden and expense which interlocutory appeals like the one at bar cause this Court, this state, and the parties should not be ignored. Nor should we continue to allow parties to use Rule 54(b) as a mere delay tactic rather than for its intended use of expediting the administration of justice. The trial court's decision to grant defendant's motion for partial summary judgment was rendered over one year before the appeal could even be calendared for hearing before this Court. Had plaintiff not appealed the order, his case could have gone to trial long before the date of this decision. There would then be before this Court a whole appeal rather than a fragment, and the first of what is likely to be multiple appeals.

While the "same judge, same jury" rationale is generally a strong argument, it should be emphasized that our courts have been guided by the principle of reviewing interlocutory appeals on a case-by-case basis. *Waters*, 294 N.C. 200, 240 S.E.2d 338. "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Id.* at 208, 240 S.E.2d at 343. As we have previously discussed, the particular facts and procedural history of the case at bar warrant a dismissal.

Dismissed.

Judges COZORT and LEWIS concur.